1
2
3
4
5
6
7          UNITED STATES DISTRICT COURT
8        FOR THE EASTERN DISTRICT OF CALIFORNIA
9

| | |
|---|---|
| 10  UNITED STATES OF AMERICA, | Case No.  1:17-cr-00135-NONE-SKO |
| 11       Plaintiff, | ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA |
| 12    v. | (Doc. 393) |
| 13  RAUL ZAMUDIO HURTADO, JR., | |
| 14       Defendant. | |

15

16          Pending before the court is defendant Raul Zamudio Hurtado Jr.'s motion to withdraw his

17  previously entered plea of guilty.  (Doc. No. 393.)  After a series of filings and hearings related to

18  issues of defendant's waiver of the attorney client privilege by filing this motion and defendant's

19  release on bond, evidentiary hearings on his motion to withdraw his plea were eventually held on

20  June 26, 2020 and October 8, 2020.  (Doc. Nos. 430, 442.)  For the reasons set forth below,

21  defendant's motion to withdraw his guilty plea will be denied.[1]

22  /////

23

---

24  [1]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
25  overwhelming caseload has been well publicized, and the long-standing lack of judicial resources
    in this district long-ago reached crisis proportion.  That situation, which continued unabated for
26  over twenty-two months but has now been partially addressed by the U.S. Senate's confirmation
    of a new district judge for this court on December 17, 2021, left the undersigned presiding over
27  approximately 1,300 civil cases and criminal matters involving 735 defendants for almost two full
    years.  Unfortunately, under these extraordinary conditions, the court sometimes overlooked
28  certain matters it had under submission for decision and that is what occurred here.

**BACKGROUND**

On May 8, 2017, defendant Raul Zamudio Hurtado Jr. and ten others were charged by way of criminal complaint with various drug trafficking and firearm offenses.  (Doc. No. 1.)  On May 11, 2017, defendant Zamudio Hurtado made his initial appearance before the court, counsel was appointed to represent him and the matter was set for a detention hearing on May 16, 2017. (Doc. Nos. 65, 71, 84.)  On the date of that detention hearing, retained counsel Mark Broughton made a general appearance on behalf of defendant Zamudio Hurtado, the matter was heard, and defendant was ordered released by the magistrate judge on a secured bond with Pretrial Services supervision of the conditions of his release.  (Doc. Nos. 90, 97, 99, 110.)[2]  On May 25, 2017, an indictment was returned in which defendant Zamudio Hurtado was charged in five counts with conspiracy to distribute and possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of  methamphetamine and 50 grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count 1); three counts of distribution of 50 grams or more of actual methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Counts 8–10); and possession of 50 grams or more of actual methamphetamine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count 13).  (Doc. No. 122.)  Each of the five counts in which defendant was charged carried, upon conviction, a mandatory minimum ten-year term of imprisonment up to a maximum of life imprisonment, a fine of up to $10 million or both fine and imprisonment, a five year to life term of supervised release and a mandatory $100 special assessment. (Doc. No. 122-1.)

After arraignment and several status conferences at which defendant and attorney Broughton appeared (Doc. Nos. 134, 184, 209, 220, 250), on December 3, 2018, a jury trial date of August 6, 2019 was set in defendant's case by the previously assigned district judge.  (Doc. No. 270.)  On June 25, 2019, the court issued its Pretrial Order.  (Doc. No. 335.)  On July 16, 2019, three weeks before his trial was scheduled to commence, a plea agreement between the

---

[2]  The government sought review of the release order and that motion to revoke the release order was denied, with defendant being ordered released on a $400,000 secured bond with conditions under Pretrial Services supervision.  (Doc. No. 144.)

1    government and defendant Zamudio Hurtado was filed on the court's docket. (Doc. No. 339.)

2    On July 29, 2019, the defendant appeared before the court with his retained counsel of record Mr.

3    Broughton and, following a full and complete plea colloquy conducted by the court, entered his

4    plea of guilty to conspiracy to distribute and possess with the intent to distribute 500 grams or

5    more of a mixture or substance containing a detectable amount of methamphetamine and 50

6    grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) as

7    charged in Count 1 of the indictment. (Doc. Nos. 346, 367.) Because the provisions of the

8    Mandatory Detention Act (18 U.S.C. § 3143(a)(2)) applied to the offense to which defendant

9    entered his plea of guilty, he was ordered remanded into custody at that time. (Doc. No. 346, 367

10   at 7–9.) Defendant's then–approaching August 6, 2019 trial was vacated in light of his change of

11   plea. (Doc. No. 348.)

12          On September 16, 2019 a Draft Presentence Report was filed by the U.S. Probation Office

13   reflecting an advisory sentencing guideline range calling for a term of imprisonment of 188 to

14   235 months, with a recommendation that a 188 month term of imprisonment be imposed on

15   defendant. (Doc. No. 360 at 5, 29.) On October 7, 2019, a Final Presentence Report was filed

16   reflecting that same advisory sentencing guideline range and recommendation. (Doc. No. 368.)

17   On October 15, 2019, attorney Broughton filed formal objection to the Final Presentence Report

18   on behalf of defendant. (Doc. No. 369.) On October 23, 2019, the court continued the October

19   28, 2019 sentencing hearing in defendant's case to January 21, 2020. (Doc. No. 375.) Also on

20   October 23, 2019, a Revised Final Presentence Report was filed by the probation office reflecting

21   a newly calculated advisory sentencing guideline range of 262 to 327 months imprisonment, with

22   a recommended sentence of 262 months in prison, based upon the probation officer's

23   determination that defendant in fact qualified as a career offender under the U.S. Sentencing

24   Guidelines. (Doc. Nos. 376 at 9, 376-1.) Finally, on December 30, 2019, yet another Revised

25   Final Presentence Report was filed, also reflecting the higher advisory sentencing guideline range

26   and the same 262 month recommendation by the probation officer. (Doc. No. 382.) On January

27   7, 2020, attorney Broughton filed formal objections to the Revised Presentence Report which

28   included an objection to the new career offender finding. (Doc. No. 383.)

On that same date, January 7, 2020, a proposed substitution of attorneys was submitted seeking to have retained counsel Kevin Little substituted in place of retained attorney Broughton as defendant's counsel of record.  (Doc. No. 385.)  Although the proposed substitution of attorneys was denied without prejudice on two occasions by the previously assigned district judge due to the proximity of defendant's January 21, 2020 sentencing hearing date, that substitution was ultimately approved by the court.  (Doc. Nos. 386, 388, 390, 400.)  On January 17, 2020, newly retained counsel filed the pending motion to withdraw guilty plea on defendant's behalf.  (Doc. No. 393.)  That motion included defendant's one page declaration in which he stated that at the time of his entry of plea he did not understand that he could have pleaded open or "straight up" instead of pursuant to a plea agreement and could have thereby preserved his right to dispute facts for sentencing purposes as well as preserve his right to appeal.  (*Id.* at 6.)

On January 20, 2020, the government quickly filed a two-page opposition to defendant's motion prior to the scheduled January 21, 2020 sentencing hearing.  (Doc. No. 398.)  In that opposition, the government agreed that an evidentiary hearing was necessary to resolve the motion.  (*Id.*)  At the scheduled January 21, 2020 hearing the previously assigned district judge, who was about to assume inactive senior status, did not proceed with sentencing and instead scheduled an evidentiary hearing on defendant's motion to withdraw his plea before the undersigned.  (Doc. No. 400.)  The evidentiary hearing was continued to allow the parties to brief the issue of defendant's waiver of the attorney client and work product privileges with respect to attorney Broughton as well as the scope of that waiver.  (Doc. Nos. 403, 405, 406.)  That issue was resolved by the court (Doc. No. 407) and eventually the matter was re-set for evidentiary hearing on June 26, 2020.  (Doc. No. 430.)[3]  Prior to that hearing, on June 24, 2020, the

---

[3]  In the meantime, on April 8, 2020, defendant filed an urgent motion for revocation of the July 29, 2019 remand/detention order, seeking his release from custody in large part based upon the coronavirus pandemic, its spread in the local jail where defendant was detained and the particular risks posed to him by the virus.  (Doc. No. 412.)  After that issue was fully briefed, the undersigned heard and ultimately granted defendant's motion based upon the finding of extraordinary circumstances and ordered him released from custody on conditions including supervision by Pretrial Services on April 17, 2020.  (Doc. Nos. 420, 424.)  Defendant Zamudio Hurtado has remained under Pretrial Services supervision since the issuance of that order.

4

1  government filed the declaration of attorney Broughton, defendant's prior counsel in this case.

2  (Doc. No. 429.)  At the June 26, 2020 evidentiary hearing defendant Zamudio Hurtado was called

3  to testify.[4]  At the conclusion of that hearing, both parties requested that a date be set to continue

4  the evidentiary hearing so that attorney Broughton (who was not available that day) could be

5  called as a witness.  (Doc. No. 433 at 45–51.)  Thereafter, on July 28, 2020, the government filed

6  supplemental opposition to defendant's motion to withdraw his guilty plea.  (Doc. No. 435.)

7  Eventually, on October 8, 2020, defendant's former attorney Mr. Broughton testified at the

8  resumed evidentiary hearing.  (Doc. No. 442.)

9        Below, the court will address the applicable legal standards as well as the evidence before

10  the court, including the testimony of defendant and his former attorney as presented at the

11  evidentiary hearings held in connection with this motion.

12                                **LEGAL STANDARD**

13        A criminal defendant may withdraw a guilty plea prior to sentencing if the defendant

14  demonstrates a "fair and just reason for withdrawal."  Fed. R. Crim. P. 11(d)(2)(B); *see also*

15  *United States v. Shehadeh*, 962 F.3d 1096, 1100 (9th Cir. 2020); *United States v. Ortega-Ascanio*,

16  376 F.3d 879, 887 (9th Cir. 2004).  This "fair and just" standard "is generous and must be applied

17  liberally," but nonetheless a defendant may not withdraw his plea "simply on a lark."  *United*

18  *States v. Ensminger*, 567 F.3d 587, 590 (9th Cir. 2009) (citations and internal quotation marks

19  omitted); *see also United States v. Hyde,* 520 U.S. 676-77 (1997) .  "'Fair and just' reasons for

20  withdrawal of a guilty plea include inadequate Rule 11 plea colloquies, newly discovered

21  evidence, intervening circumstances, or any other reason for withdrawing the plea that did not

22  exist when the defendant entered his plea." *United States v. Yamashiro*, 788 F.3d 1231, 1237 (9th

23  Cir. 2015) (citation omitted); *see also United States v. Garcia*, 401 F.3d 1008, 1111 (9th Cir.

24  2005); *Ortega-Ascanio*, 376 F.3d at 883.  However, and perhaps most importantly for purposes of

25  

26  [4]  Although a court certified Spanish language interpreter was present at the commencement of
the hearing, defendant elected to testify in the English language.  (Doc. No. 433 at 4.)  His

27  counsel accurately indicated that he had not utilized the services of an interpreter at any of his
prior court appearances, did not require an interpreter and that the case reflected an interpreter

28  "flag" only because some of his co-defendants had required the services of an interpreter.  (*Id*.)

the pending motion, it has long been recognized that "[a] defendant cannot withdraw his plea

because he realizes that his sentence will be higher than he had expected." *United States v.

Medina-Fructuoso*, 472 Fed. Appx. 758, 759 (9th Cir. 2012)[5] (quoting *United States v. Nostratis*,

321 F.3d 1206, 1211 (9th Cir. 2003); *see also United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir.

1995); *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) ("Nor do we believe that fear

of receiving a harsh sentence, standing alone, constitutes a 'fair and just' reason to withdraw a

plea" and this is true "even if counsel's initial advice as to length of plea turned out to be

inaccurate.").  In this same vein, the Ninth Circuit has observed:

> The guilty plea is not a placeholder that reserves [a defendant's] right
> to our criminal system's incentives for acceptance of responsibility
> unless or until a preferable alternative later arises.  Rather, it is a "
> 'grave and solemn act,' which is 'accepted only with care and
> discernment.'"

*Ensminger*, 567 F.3d at 593 (quoting *Hyde*, 520 U.S. at 677); *see also* Advisory Committee's

Notes on Fed. R. Crim. Proc. 32 (1983).  In keeping with these principles, it has also been

recognized that "criminal defendants cannot plead guilty to 'test the weight of potential

punishment' and then withdraw their plea if the sentence is 'unexpectedly severe.'" *Nostratis*, 321

F.3d at 1211 (*quoting United States v. Ramos*, 923 F.2d 1346, 1359 (9th Cir.1991), *overruled on

other grounds by United States v. Ruiz*, 257 F.3d 1030, 1032 (9th Cir. 2001) (*en banc*)).  Finally,

it is the defendant who bears the burden to show a fair and just reason exists to withdraw a

previously entered plea of guilty.  *United States v. Garcia-Lopez*, 903 F.3d 887, 891 (9th Cir.

2018); *United States v. Myers*, 993 F.2d 713, 714 (9th Cir. 1993).  However, if a defendant

satisfies his burden of demonstrating the existence of one of these grounds, withdrawal of the

guilty plea  should be "freely allowed."  *United States v. Showalter*, 569 F.3d 1150, 1154 (9th Cir.

2009).

　　　　Here, defendant Zamudio Hurtado contends that he did not understand at the time that he

entered his guilty plea to the conspiracy count pursuant to a plea agreement that he could have

instead plead open or "straight up," thereby preserving his right to appeal, his ability to dispute

---

[5]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
36–3(b).

1   facts relevant to his sentencing and still have received acceptance of responsibility in connection

2   with the advisory sentencing guideline calculation in his case.  (Doc. No. 393 at 1, 6.)  His current

3   counsel has gone to some lengths to characterize defendant's basis for the motion to withdraw the

4   guilty plea not as ineffective assistance of counsel but rather as his lack of understanding that an

5   open plea may have been advantageous for him.  (Doc. Nos. 393 at 1,4, 6; 433 at 46–48.)

6          Regardless of the precise basis for the pending motion and how it can be characterized, it

7   is important to acknowledge that "[e]rroneous or inadequate legal advice may also constitute a

8   fair and just reason for plea withdrawal, even without a showing of prejudice, when the motion to

9   withdraw is made presentence."  *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir.

10  2008).  In such instances it is a defendant's burden is to show, however, first that his counsel's

11  advice was "[e]rroneous or inadequate"  and, second, that "proper advice" could "plausibly have

12  motivated a reasonable person in his position *not to have pled guilty*."  *Id.* at 1167–68 (emphasis

13  added)[6]; *see also Yamashiro*, 788 F.3d at 1237 ("Yamashiro has not presented evidence to rebut

14  the presumption that his statements at his plea were voluntary, nor has he presented evidence to

15  suggest that it was plausible that he would have chosen to go to trial had he been given proper

16  legal advice."); *United States v. Bonilla, 637* F.3d 980, 983 (9th Cir. 2011).

17         For the reasons explained below, defendant Zamudio Hurtado has failed to satisfy his

18  burden here.

19                        **EVIDENCE AND ANALYSIS**

20         As noted above, in moving to withdraw his guilty plea defendant submitted a declaration

21  in which he stated only as follows:

22

23  [6]  In *McTiernan*, for example, the Ninth Circuit concluded that because the defendant had
    demonstrated a suppression motion was at least a "realistic possibility," counsel's failure to
24  advise the defendant about the basis for such a motion (or lack thereof) constituted a fair and just
    reason for the defendant to withdraw his plea.  546 F.3d at 1167–68.  Similarly, in an extreme
25  case where counsel had advised that the likely sentence to be imposed was "probation to eight
    years," when "there was virtually no chance" of a probationary sentence, the Ninth Circuit has
26  stated that the question to be answered in resolving the defendant's motion to withdraw his guilty
27  plea is only whether he had shown that his counsel's grossly inaccurate prediction "plausibly
    could have motivated his decision to plead guilty."  *United States v. Davis*, 428 F.3d 802, 805–08
28  (9th Cir. 2005).

                                        7

1. I am a defendant in this case. I pleaded guilty on July 16, 2019, and I had my plea hearing on July 29, 2019. My sentencing is scheduled for January 21, 2020.

2. At the time of my plea and plea hearing, I did not understand that I could have pleaded open or "straight up," as opposed to by an agreement, and that I could therefore preserve my right to appeal, and dispute the applicable facts for sentencing purposes,

3. My plea agreement provided that I would plead guilty and waive my right to appeal, and in turn the government would recommend a low-end sentence and agree that I accepted responsibility. See Exhibit 1, plea agreement.

4. It was not until after my plea agreement, on January 3, 2020, that I learned that I could have entered an open or "straight up" plea, as opposed to pursuant to an agreement, and that I could therefore preserve my right to appeal, dispute the applicable facts for sentencing purposes, and yet still receive credit for acceptance of responsibility. As a result of my misunderstandings, I entered a plea to all of the charges alleges [sic] against me, in essence "pleading to the sheet," while at the same time waiving my right to appeal and agreeing to a very detailed, three-page factual basis.

5. If called as a witness, I could truthfully and ands [sic] competently testify to the foregoing under oath.

(Doc. No. 393 at 6.)

At the first day of the evidentiary hearing on the pending motion defendant Zamudio Hurtado testified in large part in keeping with his declaration. According to defendant, his prior attorney Mr. Broughton never told him about "the straight up plea without the deal." (Doc. No. 433 at 8, 23-24, 37, 39, 42.) While he understood the nature of the charges against him and his plea agreement, he testified that he did not understand the maximum penalty of life imprisonment that he faced on those charges. (*Id*. at 8–9.) While defendant acknowledged that during his entry of plea he told the district judge that he did understand the maximum penalty, he now testified he was actually "kind of confused" at the time. (*Id*. at 10–11.) Defendant made clear that he was not now contending the factual basis for his guilty plea to the conspiracy charge in count one, attached to his plea agreement, was false. (*Id*. at 11.) However, defendant essentially testified that as his trial date approached his prior attorney told him without further explanation he "had no choice" but to enter a guilty plea and that although he told the judge when entering his guilty plea that he understood he had the right to go to trial, he did so only because his attorney told him

8

what to say and that he was actually confused at the time. (*Id.* at 12–15, 23–24, 38–40.)[7] Although defendant testified that his prior attorney did review his plea agreement with him, he also contended that he did not review the entire agreement with him. (*Id.* at 15–16.) For instance, defendant claimed that while his attorney reviewed with him the maximum penalty section of his plea agreement, he did so only as to the sentence stating that he faced a ten-year minimum mandatory sentence but omitted from his review the sentence stating that the maximum penalty defendant faced was up to life imprisonment. (*Id.* at 17.) According to defendant, his prior attorney never reviewed the sentencing guidelines with him or "told me really what I was looking at." (*Id.* at 18.) Moreover, defendant testified that despite the appeal and collateral attack waiver provision of his plea agreement, he did not understand he had waived his right to appeal his guilty plea, conviction and sentence because his prior attorney never told him about that. (*Id.* at 38.)

Defendant did acknowledge that there was no new evidence or legal defense discovered by him after his entry of his guilty plea, but rather that the sole basis for his motion to withdraw his plea was that he did not understand at the time that he could have plead guilty without a plea agreement. (*Id.* at 18–19.) Defendant also made clear that if he were allowed to withdraw his previously entered guilty plea, he did not desire to go to trial on the charges against him, but would rather attempt to negotiate a "better deal" or plead straight up in an attempt to receive a sentence of less prison time. (*Id.* at 19–22.)

Defendant Zamudio Hurtado testified that when the first presentence report in his case was issued, his former attorney did meet with him and review that report, though defendant believed that its recommendation as well as the government's was for a 120 month sentence in his case (*id.* at 25, 27) as opposed to the 188 month sentence in fact originally recommended. (Doc. No. 360 at 5, 29–30.) But, defendant also testified that his prior attorney never advised him of the 188 month recommendation even though he agreed that his attorney reviewed the report containing that recommendation with him. (Doc. No. 433 at 27.) Moreover, according to

---

[7] Defendant would not state that his prior attorney forced him to plead guilty. (Doc. No. 433 at 14–15.)

1   defendant, his prior attorney never reviewed the Revised Final Presentence Report with him but

2   merely told him that the new report was now recommending a 262 month term of imprisonment

3   and that he would be filing objections to it in order to try and obtain a lower sentence.  (*Id.* at 28–

4   31.)  Defendant also testified that after this exchange he had no further contact with his former

5   attorney and that he never saw the Third Final Revised Presentence Report that was filed on

6   December 30, 2019.  (*Id.* at 32–33.)  According to defendant, during the approximately two years

7   and eight months he was represented by attorney Broughton, they met prior to his entry of plea on

8   only two occasions.  (*Id.* at 35, 43.)  Defendant claimed that although he appeared in court with

9   his attorney approximately five times, they never really spoke about the case. (*Id.* at 44.)  After he

10  entered his guilty plea, defendant asserted that attorney Broughton visited him only once or twice

11  in jail and never gave him his presentence report to review.  (*Id.* at 36–37.)  Although defendant

12  was unclear as to when he met with his new attorney, Mr. Little, he maintained that it was

13  attorney Little who first told him that he could have entered an open plea of guilty and received a

14  lesser sentence.  (*Id.* at 33–34.)

15          As noted above, the government submitted a declaration from defendant's former counsel

16  in support of its opposition to the motion to withdraw plea and refuting the representations made

17  by defendant in his own declaration.  Thus, attorney Broughton declared:

18          1. I am an attorney admitted to practice law in the State of California
            since 1978. I am certified by the State Bar of California as a criminal
19          law specialist.  I have considerable experience litigating both federal
            and state criminal cases, including ones involving the most serious
20          charges.

21          2. On or about May 16, 2017, I was retained by defendant Raul
            Zamudio Hurtado in this action.  I was his attorney of record from
22          that date until January 7, 2020.

23          3. During my representation of him, I became thoroughly familiar
            with the discovery and legal issues in his case and consulted with
24          him numerous times about the various aspects of his case.

25          4.  I explained to him before receiving the proposed plea agreement
            that he had three options: plead pursuant to an agreement, plead
26          without an agreement, that is an "open" or "straight up" plea, or
            proceed to trial.  I explained these options and the facts that the
27          government would prove at trial to him on multiple occasions.

28  /////

5. I also consulted with him about numerous issues pertaining to his guilty plea prior to his signing the plea agreement (Dkt. No. 339) on July 15, 2019. We spent what I believed to be more than enough time going over the agreement, the Guidelines and issues related to his prior criminal history, and the potential consequences of his guilty plea pursuant to that agreement.

6. He made it clear that he did not want to plead without an agreement, so we did not discuss that option in detail. I did not force him to accept an open plea because he did not want to do it. We instead focused more on the other two options. He was not inclined to go to trial so he decided to accept the government's plea offer. I did not force or persuade him to plead guilty to the government's plea offer. However, his concern was the statement of facts in the plea agreement; I did advise him that he would have to admit in open court that the factual statement contained in the plea agreement was true and accurate. He understood this and later admitted same in open court.

7. I cannot at this point say why he did not want to plead straight up or what he subjectively understood were the differences between pleading pursuant to an agreement versus without one. In my dealings with him, I found him to be competent but of relatively low intelligence.

(Doc. No. 429.)

In his testimony at the second day of the evidentiary hearing in connection with the pending motion, attorney Broughton continued to refute defendant's version of events just as he had in his declaration. According to Broughton, during the course of his representation, he and the defendant had met in person and by phone approximately ten times to discuss the case. Broughton found defendant to be a "great guy" who did well on pretrial release, was trying to overcome his past, but was not well-educated. Therefore, Broughton recalled having taken extra time to explain things to him. Broughton was working on preparing for trial and the government's plea offer was soon to expire. His assessment was that the evidence against defendant on some of the counts was stronger than as to other counts, with less of a likelihood of defense success at trial as to counts where there were wiretap recorded conversations and surveillance directly implicating defendant. According to Broughton, he reviewed all the evidence against him with defendant. Ultimately, he had presented defendant with three options as to how to proceed—go to trial, accept the government's plea offer, or plead "straight up" or open. Broughton insisted that he never indicated to defendant that he had "no choice" in this

1  regard.  According to attorney Broughton, defendant Zamudio Hurtado was adamant that he did

2  not want to go to trial.  Defendant also summarily rejected an open plea as a viable option.

3  Rather, defendant decided he wished to accept the government's plea offer and, in the end, was

4  adamant about that as well.  Defendant's main concern was regarding the factual basis for his

5  guilty plea.[8]  In Broughton's view, although defendant's case was triable, certainly as to some

6  counts, if defendant had gone to trial and been convicted on all counts, the ultimate sentence

7  imposed could be worse for him than that likely under the parties' plea agreement.

8          Attorney Broughton testified that he reviewed every bit of the proposed plea agreement

9  with defendant and discussed the maximum penalty (life imprisonment) at length with him.  They

10  also discussed defendant's significant prior criminal record and the impact it might have on his

11  sentencing, and reviewed the possible sentencing range calculations under the advisory

12  guidelines.  Broughton flatly denied having instructed defendant to answer questions put to him

13  by the judge at the change of plea hearing in any way that was not truthful.  When the Revised

14  Final Presentence Report, with its recommendation of 262 months in prison as opposed to the

15  original 188 month recommendation, was received, attorney Broughton told defendant and his

16  wife of the new recommendation and they were very upset.  According to Broughton, soon

17  thereafter, defendant retained attorney Little who substituted into the case on defendant's behalf.

18          Having observed and considered the testimony of the witnesses, the undersigned finds that

19  attorney Broughton's testimony was specific, clear and quite credible.  On the other hand, the

20  court finds defendant Zamudio Hurtado's testimony lacked credibility in almost all material

21  respects.  Defendant's testimony is belied by both the plea agreement which he signed and his

22  answers given to the court during his plea colloquy.  The court notes that immediately above

23  defendant's signature on his plea agreement it states:

24              I have read this plea agreement and carefully reviewed every part of
               it with my attorney.  I understand it, and I voluntarily agree to it.
25              Further, I have consulted with my attorney and fully understand my

26  _____

27  [8]  According to attorney Broughton, defendant had reservations about admitting to a factual basis
    for his guilty plea and was interested in a *nolo contendere* or so-called *Alford* plea.  However,
    Broughton informed him such a plea would not be accepted in federal court and that he should
28  not plead guilty unless a factual basis for his could be acknowledged by him as true.

12

1

2
rights with respect to the provisions of the Sentencing Guidelines that
may apply to my case.  No other promises or inducements have been
made to me, other than those contained in this plea agreement. In
addition, no one has threatened or forced me in any way to enter into
this plea agreement.  Finally I am satisfied with the representation of
my attorney in this case.

3

4

5    (Doc. No. 339 at 8–9.)  Moreover, at his change of plea hearing defendant Zamudio Hurtado

6    admitted that Count 1 to which he was pleading guilty involved the amount of methamphetamine

7    alleged in the indictment and he assured the district judge taking his plea that he:  had an

8    opportunity to review his entire plea agreement and discuss it with his attorney and had no

9    remaining questions about it; understood the elements of the offense to which he was pleading

10   guilty; understood he was waiving his right to appeal; understood that the minimum mandatory

11   sentence for that count was ten years in prison and the maximum penalty he faced was up to life

12   imprisonment; understood that he had the right to go to trial if he desired to do so along with all

13   rights that accompanied a trial; that he was not being forced to plead guilty nor made any

14   promises other than those stated in his plea agreement; and understood that the court was not

15   obligated to follow the advisory sentencing guidelines in imposing his sentence.  (Doc. No. 367 at

16   2–6.)  Of course, "[s]tatements made by a defendant during a guilty plea hearing carry a strong

17   presumption of veracity in subsequent proceedings attacking the plea."  *Yamashiro*, 788 F.3d at

18   1237 (quoting *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008)); *see also United States*

19   *v. Briggs*, 623 F.3d 724, 728 (9th Cir. 2010) ("We take the district court's detailed colloquy with

20   Briggs as strong evidence that Briggs understood the meaning of his actions.").

21          Defendant Zamudio Hurtado's statements to the court during the change of plea hearing as

22   well as the specific terms of the plea agreement which he signed directly contradict the

23   contentions upon which he now bases his pending motion to withdraw his plea.  Defendant's

24   self-serving testimony in connection with this motion that he did not understand that he could

25   have entered an open plea to all counts, that he was confused when he entered his change of plea

26   and that he did not understand much about his case including the maximum penalty that he faced,

27   did not understand that he was waiving his right to appeal or did not understand the contents of

28   much of his plea agreement and his presentence report is simply not credible in light of the

Case 1:17-cr-00135-DAD-SKO   Document 456   Filed 02/04/22   Page 14 of 17


1    overwhelming evidence to the contrary.  The motion to withdraw plea could be denied on this

2    basis alone in that defendant has failed to meet his burden of establishing that he was both

3    inadequately advised by his counsel and that but for the mis-advisement it is plausible that a

4    reasonable person in his position would not have pled guilty.  *See Yamashiro*, 788 F.3d at 1237;

5    *Bonilla*, 637 F.3d at 983; *McTiernan*, 546 F.3d at 1167.

6          Nonetheless, the court finds it appropriate to note a number of other circumstances which

7    support the denial of the pending motion.  First, defendant entered his plea of guilty to Count 1 of

8    the indictment on July 29, 2019.  The Draft Presentence Report, with its recommendation of a 188

9    month term of imprisonment was filed on September 16, 2019 (Doc. No. 360) and the first Final

10   Presentence Report reflecting that same recommendation was filed October 7, 2019 (Doc. No.

11   368).  Defendant conceded that he met with his former attorney and discussed this presentence

12   report with him.  (Doc. No. 433 at 25.)  Yet, defendant did not at that time move to withdraw his

13   plea.  The Second Revised Presentence Report was filed October 23, 2019 (Doc. No. 376) and the

14   Third Revised Presentence Report was filed December 30, 2019 (Doc. No. 382), with both

15   reflecting the new recommendation of a 262 month term of imprisonment based upon a finding of

16   defendant's career offender status.  It was only then, with his sentencing fast approaching on

17   January 21, 2020, that defendant sought to substitute in new counsel on his behalf and moved to

18   withdraw his plea on January 17, 2021.  (Doc. Nos. 385, 387, 389, 393.)  The timing of

19   defendant's moving to withdraw his plea strongly suggests that he did so nearly on the eve of his

20   sentencing simply because he then realized that his sentence might be higher than he had

21   expected.[9]  *See Nostratis*, 321 F.3d at 1211 ("In the instant case, Nostratis moved to withdraw his

22   plea only after learning from the presentence report that his likely sentencing range was 135 to

23

24   [9]  The court understands that it is defendant's contention that he did not understand that he could
     plead open to the charges until his new attorney informed he could have done so in early January
25   of 2020.  However, the court finds attorney Broughton's testimony that he did in fact review with
     defendant prior to his change of plea that among his three options was the option of pleading open
26   to all the charges, but that defendant summarily rejected that option preferring instead to enter
     into a plea agreement with the government.  Thus, the cases cited by defendant for the proposition
27   that a defendant's lack of awareness of the option of pleading open to all charges without a plea
     agreement can have constitutional implications (Doc. No. 393 at 4) are simply inapplicable here.
28

                                                   14

168 months and that the government would only move for a two-level downward departure.").
Of course, fearing that one may be sentenced more severely than originally anticipated is not a
"fair and just reason" for requesting withdrawal of a plea. *Medina-Fructuoso*, 472 Fed. Appx. at
759; *Nostratis*, 321 F.3d at 1211; *Alber*, 56 F.3d at 1111; *Shah*, 878 F.2d at 1162.

       Moreover, in this case the court need not speculate as to defendant's motivation in moving
to withdraw his plea. That is because in one of the few credible areas of his evidentiary hearing
testimony, defendant candidly admitted that he was doing so, not to go to trial but rather to either
negotiate a more favorable plea agreement with the government or, absent that, to enter an open
plea to all charges in an attempt to serve less prison time than recommended in the Revised Final
Presentence Report. (Doc. No. 433 at 19–22.) As the government has pointed out, defendant has
cited no authority for the proposition that the desire to negotiate a better plea bargain constitutes a
"fair and just reason" for requesting withdrawal of a previously entered plea, nor does the
applicable Ninth Circuit authority support such a curious proposition. *See Ensminger*, 567 F.3d at
593; *Nostratis*, 321 F.3d at 1211 ("criminal defendants cannot plead guilty to 'test the weight of
potential punishment' and then withdraw their plea if the sentence is 'unexpectedly severe.'")

       Finally, the court observes that the premises upon which the pending defense motion is
based appear to be flawed. First, in moving to withdraw his plea defendant has repeatedly argued
that, in essence, under his plea agreement he "pleaded to the sheet" while at the same time
waiving his right to appeal and agreeing to a detailed factual basis for his plea that prevented him
from contesting certain facts at his sentencing. (Doc. Nos. 393 at 3–4; 433 at 48.)[10] However,
this clearly was not the case. Pursuant to his plea agreement defendant agreed to plead guilty to
Count 1 of the indictment charging him with conspiracy to distribute and possess with the intent
to distribute 50 grams or more of actual methamphetamine and 500 grams or more of a mixture or
substance containing a detectable amount of methamphetamine. (Doc No. 339 at 2.) In exchange
for that plea, the government agreed to dismiss the three distribution of methamphetamine counts

---

[10]  Specifically, defendant's current counsel argued that: "[T]here were no charges being
dismissed as part of the plea . . . he was pleading to all the charges in the plea agreement. So
functionally, he was pleading to the sheet. The only difference being he was agreeing to a very
long multi-page statement of facts and waiving his right to appeal." (Doc. No. 433 at 48.)

1   and the possession with intent to distribute methamphetamine counts in which defendant was

2   charged, each of which was punishable by a term of imprisonment of a mandatory minimum ten

3   years up to a maximum of life imprisonment.[11]  (*Id*. at 4.)

4         In addition, defendant has argued that that the government's agreement to recommend a

5   sentence at the low end of the sentencing guideline range as determined by the court was of no

6   benefit to the defendant because there is a statutory presumption that a low-end of the guideline

7   range sentence will be imposed, citing 18 U.S.C. § 3553(a)(2).  (Doc. No. 393 at 4.)  First, the

8   cited statute does not stand for the proposition advanced by defendant nor is the court aware of

9   any authority supporting that proposition.  As a practical matter, in this court's experience, a

10  government recommendation of a sentence at the low-end of the guideline range as determined

11  does in fact often make it more likely that a low-end of the guideline range or even lower

12  sentence will be imposed by the court.  Accordingly, obtaining such a recommendation as part of

13  a plea agreement is of some benefit to a defendant in practice.

14        Finally, defendant has complained that had he entered an open plea to all the charges

15  without a plea agreement he could have contested the facts underlying his guilty pleas at

16  sentencing and preserved his right to appeal.  (Doc. No. 393 at 4–6.)  However, defendant has

17  never identified any facts that he would have been able to contest had he entered an open plea

18  instead of entering into his plea agreement or how any such contested facts would have

19  conceivably changed his advisory sentencing guideline range which was increased in the Revised

20  Final Presentence Report due to the conclusion that defendant qualified as a career offender under

21  the guidelines.

22        For these reasons as well, defendant has failed to meet his burden of establishing that due

23  to mis-advisement by his prior counsel it is plausible that a reasonable person in his position

24  would not have pled guilty.

25  /////

26

27  _____

    [11]  While the defendant would have been exposed to additional statutory penalties if convicted of
28  the to be dismissed counts, it is the case that because those counts would have been grouped there
    would have been no change to the advisory sentencing guideline range.  (Doc. No. 382 at 26–27.)

**CONCLUSION**

For all of the reasons explained above:

1. Defendant Zamudio Hurtado's motion to withdraw his guilty plea (Doc. No. 393) is denied.

2. Because the undersigned has devoted considerable time to defendant's case and is now familiar with it, in order to conserve the scarce judicial resources of this court, the Clerk of the Court is directed to re-assign this case as to this defendant only to the undersigned and to remove the NONE case designation;

3. Sentencing in this case is now scheduled for March 7, 2022 at 9:00 a.m.[12] before the undersigned and the defendant is ordered to appear at that date and time; and

4. Any supplemental formal objections to the Third Final Revised Presentence Report, sentencing memorandums or other materials with respect to sentencing in addition to those previously filed (Doc Nos. 391, 394-397) shall be filed no later than ten days prior to sentencing with any responses to any such filings to be submitted no later than five days before the sentencing hearing date.

IT IS SO ORDERED.

Dated:   __February 4, 2022__                     _____
                                                                           UNITED STATES DISTRICT JUDGE

---

[12] With the consent of the defendant and his counsel the sentencing hearing will be conducted by way of video conference under the CARES Act in light of the ongoing COVID-19 pandemic and the currently high infection rates of that virus in Fresno County.  In addition, should any party be unavailable on the date set for sentencing by this order, the parties are directed to confer with the undersigned's courtroom deputy, Mamie Hernandez, to determine an appropriate date and to submit a stipulation and proposed order to the court re-setting the sentencing date.

17